STATE EX REL. BALE et al., as Board of Drainage Commissioners in and for Ransom County, v. MORRISON et al., as Supervisors of the Township of 134–58, Known and Designated as Hanson Township, Ransom County, North Dakota.

(140 N. W. 707.)

**Drainage law — petition — municipality — citizens — public demand for drain — assessment — drainage board — authority.**

1. The drainage law, as amended by chap. 93, Laws of 1907, provides that "if among the leading purposes of the proposed drain are benefits to the health, convenience, or welfare of the people of any city or other municipality, the petition shall be signed by a sufficient number of the citizens of such municipality or municipalities to satisfy the board of drain commissioners that there is a public demand for such drain."

*Held,* that when a drain is proposed to be established for the above-mentioned purposes, the board has no authority under the provision quoted to make an assessment for the establishment and construction of a drain lying in one township against another township, in the absence of signatures to the petition of citizens of the township so attempted to be assessed.

Opinion filed February 14, 1913.

Appeal from a judgment of the District Court for Ransom County, *Allen,* J.

Reversed.

*Chas. S. Ego,* for appellants.

The drainage board has no authority upon petition for a drain by citizens of one municipality, to make assessments for drain in such municipality, against another municipality, in the absence of signatures

to the petition of citizens of the municipality sought to be assessed. Rev. Codes 1905, § 1821.

The term, "public demand for drain," has a restricted meaning, and relates only to the *citizens* of the municipality represented on the petition. Rev. Codes 1905, Sec. 1821; Lake Erie & W. R. Co. v. Hancock County, 63 Ohio St. 23, 57 N. E. 1010; Jones v. Chanute, 63 Kan. 243, 65 Pac. 243; South Highland Land & Improv. Co. v. Kansas City, 172 Mo. 523, 72 S. W. 944; State ex rel. Charleston, C. & C. R. Co. v. Whitesides, 30 S. C. 579, 3 L.R.A. 777, 9 S. E. 661.

*Rourke & Kvello,* for respondents.

The office of a petition for a drain is simply to call the attention of the drain commissioners to the necessity of a drain in that particular locality, and need not be signed by citizens of *each* municipality assessed for its construction. Rev. Codes 1905, Sec. 1821; Sim v. Rosholt, 16 N. D. 77, 11 L.R.A.(N.S.) 372, 112 N. W. 50; Mackay v. Hancock County, 137 Iowa, 88, 114 N. W. 553; Brady v. Hayward, 114 Mich. 326, 72 N. W. 233; Chandler v. Heisler, 153 Mich. 1, 116 N. W. 626; Erickson v. Cass County, 11 N. D. 494, 92 N. W. 841.

SPALDING, Ch. J. June 24, 1909, a petition was filed with the board of drain commissioners of Ransom county for the construction of a drain a little over a mile in length, on sec. 2, in township 134 north, of range 57 west, known as Elliott civil township, in Ransom county. The petition need not be set out at length. It is sufficient to say that it was signed by thirteen citizens, residents and freeholders of Springer and Elliott civil townships, Springer being the township north of Elliott; and represented that "among the leading purposes of the proposed drain are benefits to the health, convenience, and welfare of the people of Springer and Elliott townships, and that the public necessity, convenience, health, and welfare of said people require the construction and maintenance of a drain as hereinafter described, and that one of the chief purposes of said drain is the drainage of agricultural, meadow, grazing, and other lands of said county." Hanson township is the township west of Elliott, and at its eastern boundary is more than 4 miles distant from any part of the proposed drain. In the petition Hanson township was not mentioned, directly or indirectly, and no freeholder, citizen, or resident of that township signed the petition. The commis-

sioners personally examined the route of the proposed drain, caused a survey to be made, the cost determined, and a plat of the lands to be drained forthwith made, and, after the same was made and filed, caused notice of the hearing of objections to the drain to be posted along the route of the same, as provided by law. After such hearing the board entered its order establishing the drain. The assessment and letting of contracts were then noticed, and the township of Hanson, being township 134 north of range 58 west, was assessed $523.60. The notices of the hearing on the assessment were posted in each township, including Hanson township, and it is conceded that all the other steps necessary were taken in compliance with the law as it then existed. The general procedure is not attacked. Section 1821, Rev. Codes 1905, as amended by chap. 93, Laws of 1907, was the law then in force providing for the establishment of drains, and reads as follows:

"A petition for the construction of a drain may be made in writing to the board of drain commissioners, which petition shall designate the starting point and terminus and general course of the proposed drain. If among the leading purposes of the proposed drain are benefits to the health, convenience, or welfare of the people of any city or other municipality, the petition shall be signed by a sufficient number of the citizens of such municipality or municipalities to satisfy the board of drain commissioners that there is a public demand for such drain. If the chief purpose of such drain is the drainage of agricultural, meadow, grazing, or other lands, the petition shall be signed by at least six or more freeholders whose property shall be affected by the proposed drain. Upon the presentation of a petition as hereinbefore provided, and filing of the same, the board of drain commissioners shall personally as soon as practicable proceed to examine the line of the proposed drain, and if in its opinion it is necessary for the public good, it shall enter a resolution to that effect, and shall also enter a resolution designating a competent surveyor who shall survey the line thereof and establish the commencement and terminus, and determine the route, width, length, and depth thereof. For the purpose of making examinations or surveys the board of drain commissioners, surveyors, and their employees may enter upon land traversed by any such proposed drain, or upon other lands when necessary. Such surveyor shall prepare profiles, plans, and specifications of the proposed drain, an estimate of the cost thereof, and a

map or plat of the lands to be drained, in duplicate, showing the regular subdivisions thereof, one copy of which shall be filed in the office of the county auditor in the county in which the drain is proposed to be constructed, and the other with the board of drain commissioners, subject to inspection. In locating a drain, the board of drain commissioners may, under the advice of the surveyor, vary from the line described in the petition as it seems best. When the line proposed is along highways already established, the drain shall be located at a sufficient distance from the center of such highway to permit a good road along the central line thereof; when the length of the line described in the petition does not give sufficient fall to drain the lands sought to be drained, the board of drain commissioners may extend the drain below the outlet named in the petition far enough to obtain a sufficient fall and outlet. Drains shall, as far as practicable, be located on dividing lines between sections or regular subdivisions thereof, but the general utility of the drain must not be sacrificed to avoid crossing any tract of land in such direction as the board of drain commissioners find advisable. Upon the filing of the surveyor's report the board of drain commissioners shall fix a date for hearing objections to the petition, and shall give notice of such hearing by causing five notices to be posted along the line of the proposed drain at such points as will be likely, in the opinion of the board, to secure the greatest publicity. Such notices shall contain a copy of the petition, and a statement of the date of filing of the surveyor's report, and the date when the board will act upon the petition, and shall be signed by the members of the board or a majority thereof. All persons whose land may be affected by any such drain may appear before the board of drain commissioners and fully express their opinion and offer evidence upon the matters pertaining thereto."

And § 1826, Rev. Codes 1905, reads as follows: "Upon acquiring the right of way, if the assessment of benefits has not already been made under the provisions of § 1824, the board of drain commissioners shall assess the per cent. of the cost of constructing and maintaining such drain, and of providing the right of way therefor, which any county, township, city, village, or town shall be liable to pay by reason of the benefits of such drain to the public health, convenience, or welfare, and which any railroad company shall be liable to pay by reason of benefits to accrue to its property, and which any lot, piece, or parcel of land shall

be liable to pay by reason of benefits to accrue thereto, either directly or indirectly, by reason of the construction of such drain, whether such lands are immediately drained thereby, or can be drained only by the construction of other and connecting drains, but such assessment shall be subject to review by the commissioners as hereinafter provided." This section is the one under which the notice of assessment of Hanson township hereinafter referred to was given.

On the 22d of October, 1910, a correct copy of the assessment of Hanson township was served upon the clerk of that township, and at the same time a demand was served upon him that the board of supervisors, at their first general tax levy thereafter, include the amount so assessed against it by the board of drainage commissioners in their general tax levy, and make due return thereafter to the county auditor of Ransom county. Afterwards the order establishing such assessment, with proofs of service, was filed in the office of the auditor of Ransom county. On the 18th day of March, 1911, a second demand was served upon the clerk of Hanson township for the levy and return of such tax. The board of supervisors of Hanson township held their regular meeting on the 28th day of March, 1911, and refused to make such levy and return, and so notified the drainage commissioners. Whereupon the drain commission commenced this proceeding in the district court of Ransom county for the purpose of securing a writ of mandamus commanding the said township board to make and return such tax levy against the township of Hanson. The petition and writ set out the facts hereinbefore stated, with all the other steps taken by the drainage board in detail. The township board filed a motion to quash the writ on the ground that neither the petition nor writ stated facts showing the board of drain commissioners entitled thereto. The order establishing the drain contained the findings of the board, which were the basis for its establishment, and as far as material are as. follows:

"A petition for the location and establishment of a drain having been, on the 24th day of June, A. D. 1909, filed with the board of drain commissioners in and for Ransom county, state of North Dakota, and said commissioners, on the 25th day of June, A. D. 1909, having viewed and examined the route of such proposed drain and the land intended to be drained thereby, and it appearing to the board that such drain is. necessary and for the public good, and that it will be a benefit to the

public health, convenience, and welfare, and that the petition was filed with the board, is sufficient under the law, and that there was sufficient cause for the making of such petition," etc.

The only question discussed in this Court is the necessity for the petition to have, among its signers, some citizens of the township of Hanson in order to give the board jurisdiction to apportion any part of the assessment for the construction of such drain to that township as a township. It has been repeatedly held by this court that the filing of a proper petition gives the drainage board jurisdiction to establish a drain. Hackney v. Elliott, 23 N. D. 373, 137 N. W. 433; and cases cited; Edwards v. Cass County, 23 N. D. 555, 137 N. W. 581, and cases cited. But we are unable to find any case decided by this court relating to the location of the signers necessary to give jurisdiction or power to the board to make an assessment against this township as such. We apprehend that the only basis for assessing this township as such is that the drain for which assessment is made will be for the benefit of the public health, convenience, or welfare of the people of the township. Section 1826, Rev. Codes 1905, supra. And the statute requires in case of a drain from which the principal benefits are to the health, welfare or convenience that the petition be signed by a sufficient number of the citizens of the municipality or municipalities to satisfy the board of drain commissioners. Section 1826, supra, is the only authority for assessing a township, and authorizes it only when such benefits are to accrue. In this case the petition contained nothing whatever, either by means of a description of the purpose, beginning and terminus and location of the drain, or the citizenship of the signers, or in any other manner, to inform the officials of Hanson township that a drain was contemplated which should in any manner affect that township or its people. Section 1821, supra, provides for the giving of notice of hearing on the petition for the proposed drain, and requires such notice to be posted along the line of the drain, and that it must contain a copy of the petition, but there is no requirement that its contents shall include anything which will in any manner serve to indicate, or inform either officials or citizens of Hanson township, that a drain is proposed which shall affect it or them or to inform them that they have any interest in the subject. Hence they had no opportunity to appear and object to its establishment. This court has gone to the

limit in upholding proceedings for the establishment of drains, and the making of assessments to pay therefor, and we are satisfied that it would be going far beyond the bounds of justice and the intention of the legislature in the enactment of this statute to construe it to mean that all the property in a township may be assessed for the construction of a drain of which the officials had no notice, either personal or constructive, or by the request of any citizen of such township. While the petition may, and undoubtedly did, give the drain board jurisdiction to establish the drain, jurisdiction or power to make an assessment against Hanson township is another question. We are only concerned, in deciding this case, with the questions discussed in the briefs of the parties, and the question to which we have referred is all that we are called upon to answer; and this we may do without considering the sufficiency of the notice. That question is whether the "municipality or municipalities" involved are to be taken collectively or individually. If it satisfies the statute to have all the signers citizens of one or two of three townships affected, then, so far as the signers are material, the question must be answered in favor of the respondent; but if the statute, as worded, means that there must be signers from each of the townships which is to be assessed, then the appellant must prevail. It is apparent from the findings contained in the order and from the terms of the statute quoted, that the board was proceeding to assess the township for benefit to the public health, welfare, or convenience only. The parties hereto have cited few authorities; in fact they have cited only two cases bearing on the subject. In Brady v. Hayward, 114 Mich. 326, 72 N. W. 233, the supreme court of Michigan had under consideration a provision in their statute to the effect that a petition to establish a drain shall be signed by not less than five freeholders of the town or townships in which such drain, or the lands to be drained thereby and to be assessed therefor, may be situated, one or more of whom shall be owners of lands liable to be assessed for the benefits; and it was held that that provision did not require the petition to be signed by five freeholders of each township, where the drain traverses more than one township. At first impression this authority seems to sustain the order of the trial court, but on further examination we do not so construe it. In the first place the court simply held that it was not necessary to have five freeholders from each township; and in the

next place the drain under consideration, as well as the statute, related to the drainage of lands, evidently that being the main purpose of the drain rather than to benefit the health, convenience, or general welfare of the people of the township, and the drain traversed the township. But in Chandler v. Heisler, 153 Mich. 1, 116 N. W. 626, the same court, in construing a subsequent statute and resolution which required permission in writing, signed by at least a majority of the members of the township board or boards affected by such action of the county drain commissioner, held that they did not bear the construction that a majority of the aggregate number of the members of the township boards of the townships affected was sufficient, but that they required the signatures of a majority of the members of each of the township boards.

We consider the last case cited as direct authority for holding that there must be signers from each of the townships which it is proposed to assess; and we do so hold. This conclusion is supported not only by authority, but by all considerations of justice; and we must assume that the legislative assembly was attempting to establish a just system for the construction of drains; and the language of the statute supports our construction. From a consideration of the language of the statute relating to signers of the petition, and from these authorities, we conclude that the petition for this drain did not empower the drainage commission to make an assessment against the township of Hanson as a civil township. From statements contained in respondent's brief it appears that the purpose of building the drain was to drain a tract of land lying in Elliott township for the improvement of a highway in that township. If so, here was an indirect method adopted to secure aid by taxation of all the property in Hanson township to build or maintain a highway in Elliott township; and we are impressed with the idea that the benefit contemplated by the statute to highways in the construction of drains is such as may incidentally accrue, and that the drainage law is not intended as a primary means for the construction or repair of highways.

One other error was assigned, but as it is not discussed we do not pass upon it. The judgment of the trial court is reversed, and the case is remanded for proceedings according to law.